# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. KEVIN KNISS, an individual, <br> 2. TED RABURN, an individual, <br> 3. RANDY SWARTWOOD, on behalf of themselves and a class of those similarly situated, <br><br> Plaintiff, <br> vs. <br><br> AMERICAN AIRLINES, INC., <br> a foreign for profit business corporation, <br><br> Defendant. | Case No. 18-cv-00212-JHP-JFJ. <br><br> JURY TRIAL DEMANDED <br> ATTORNEY LIEN CLAIMED FOR THE FIRM |

## COMPLAINT

**COMES NOW**, the Plaintiffs, Kevin Kniss, Ted Raburn, and Randy Swartwood (hereinafter "Named Plaintiffs") on behalf of themselves and a class of those similarly situated, by and through their attorneys of record, Charles C. Vaught and Jessica N. Bailey of the firm *Armstrong & Vaught, P.L.C.*, and hereby submits the following *Complaint* against the Defendant. In support thereof, the Plaintiffs would respectfully show the court as follows:

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, Title II of the Genetic Information Non-Discrimination Act of 2008, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and genetic information and to provide appropriate relief to a class of employees, including the Named Plaintiffs, who have been adversely affected by such practices. As alleged with greater particularity below, Defendant unlawfully sought genetic information about the Named Defendants, and other employees, by asking these employees to submit to purportedly mandatory blood testing as a condition of

1

continued employment. The blood testing at issue was an unwarranted medical inquiry, as a test on my blood is not related to my job or consistent with business necessity.

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, and 1343. In particular, jurisdiction is premised on a violation of the Genetic Information Non-Discrimination Act, as amended, 42 U.S.C. § 2000ff, *et seq.*

2. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. §§ 2000ff, *et seq.*

3. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

4. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

5. Plaintiffs are and were, at all times relevant hereto, residents of the State of Oklahoma, residing in the Northern District of Oklahoma.

6. The acts and/or omissions giving rise to this lawsuit occurred in Tulsa County, State of Oklahoma.

7. In conformance with Title VII statutory prerequisites, Named Plaintiff Kevin Kniss submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC") which identified a class of employees who were similarly situated to him which had been subjected to actions by the Defendant which violated the Genetic Information Non-discrimination Act. Subsequently, Named Plaintiff Kniss submitted a Charge of Discrimination to the EEOC covering such class of employees. The EEOC issued a Notice of

2

Conciliation Failure and a Notice of a Right to Sue on January 17, 2018 (attached as Exhibit A hereto and hereby incorporated by reference as though fully set forth herein), which was received by Named Plaintiff Kniss on January 20, 2018.

8. Defendant is an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), and under Section 201(2)(B)(i) of the GINA, 42 U.S.C. § 2000ff(2)(B)(i), all of which incorporate by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

9. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

10. Plaintiffs are, and were at all times relevant hereto, employees as defined by the ADA, the GINA and Title VII, in that they were employed by an employer.

## CLASS ACTION ALLEGATIONS

11. This complaint is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of all current and former American Airlines employees employed in Shop 205-1 at Defendant's maintenance base located in Tulsa, Oklahoma who submitted to mandatory blood testing under a Medical Surveillance program designed to determine the employee's exposure to heavy metals during their employment with Defendant.

12. The class is so numerous that joinder of all members is impracticable.

13. All members of this class were subjected to the same testing done by American Airlines.

14. There are questions of law and fact as to the permissibility of the Defendants' mandatory blood testing that are common to all members of the class.

15. Common questions of law and fact predominate over questions affecting individual Class Members. These questions of law and fact common to members of the class include, but are not limited to:

a. whether American Airlines Shop 205-1 was a "regulated shop" under the Occupational Safety and Health Act, regulations, or agency order at the time the mandatory blood testing was conducted;

b. whether the genetic monitoring of Defendant's employees was required by federal regulations;

c. whether the Named Plaintiffs and other Class Members were subjected to mandatory blood testing;

d. whether Defendant requested, required or purchased genetic information about Named Plaintiffs and other Class Members;

e. whether the blood testing completed by Defendant was a genetic test which involved the analysis of human DNA, RNA, chromosomes, proteins, or metabolites that detects genotypes, mutations or chromosomal changes;

f. whether the blood testing completed by Defendant was genetic monitoring that is either required by law or was provided on a voluntary basis by the Named Plaintiffs and other Class Members;

g. whether the blood testing completed by Defendant was related to Plaintiffs' positions or consistent with business necessity;

h. whether the blood testing completed by Defendant was a medical inquiry under the Americans with Disabilities Act;

i. whether Defendant's actions violated the Genetic Information Non-discrimination Act; and

j. whether Defendant's actions violated the Americans with Disabilities Act.

16. Due to these and other common issues of law and fact, the litigation of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, establishing incompatible rules of law for the provision of services to people suffering from genetic discrimination.

17. Prosecution of separate actions by individual class members would create risk of inconsistent or varying adjudications with respect to individual class members which also would establish incompatible standards of conduct for the Defendants and could as practical matter be dispositive of the interests of the other members or substantially impair or impede their ability to protect their interests.

18. Defendant's common testing of the Named Plaintiffs' and Class Members' blood involuntarily has affected and will affect the class generally, thereby making appropriate final injunctive relief with respect to the class as a whole.

19. Named Plaintiffs will fairly and adequately represent the interests of all members of the class. Specifically, they are current employees of Defendant and were subjected to the blood test completed by Defendant in violation of the Genetic Information Non-Discrimination Act.

**OPERATIVE FACTS**

20. Named Plaintiffs are each long-time employees of American Airlines who were, at the relevant time, working in Shop 205-1 at Defendant's maintenance facility in Tulsa, Oklahoma.

21. On January 6, 2016, Plaintiffs were informed via an email sent to the Transport Workers Union ("TWU") 514 by Mark Easton, Maintenance Director, that all employees subject to a Medical Surveillance program were required to submit to heavy metal exposure testing as a condition of employment and that refusal to test would be considered insubordination.

22. Although the TWU initially objected to any testing related to heavy metal exposure, beginning on April 16, 2016, Plaintiffs were informed that employees of Shop 205-1 were required under

5

the Occupations Safety and Health Act to submit to mandatory blood testing as the shop was an OSHA-regulated shop.

23. On April 28, 2016 Plaintiff Kniss received his letter regarding the blood testing. Plaintiff Kniss reported at his specified time and opted out of providing a blood sample to Defendant.

24. On May 1, 2016 Plaintiff Kniss met with Mr. Easton and other AA management regarding the legality of the testing. Mr. Easton informed Plaintiff Kniss that he would be provided full documentation of the legality of the blood testing before his blood test was rescheduled.

25. On May 2, 2016, Plaintiff Kniss was handed a written Directive by his Supervisor, Dominic Brasher, to report to AA Medical for blood testing. This letter stated that "failure to follow this directive will be considered insubordination" and thereby leading to disciplinary actions and/or termination. When Plaintiff Kniss refused to give blood, he was immediately taken out of service by Defendant's HR personnel.

26. After being out of service for 24 hours, Mr. Brasher asked Plaintiff Kniss if he was going to turn over his badge or submit to the blood test. Plaintiff Kniss submitted a sample of his blood, unwillingly and under protest.

27. In September of 2016, the results of the mandatory blood tests were completed. Some Plaintiffs were given false clean bills of health while others were denied any results at all.

28. On August 22, 2016, Shop 205-1 was re-tested to determine if it was above action level. The test results confirmed that Shop 205-1 was not above action level.

29. On January 25, 2017, Defendant's agent, Michael Hodes, Senior Manager Occupational Safety and Health, submitted a letter to the Occupational Safety and Health Administration which admitted that Shop 205-1 shop was never an above action level shop and, therefore, was not an OSHA-regulated shop.

30. Plaintiffs' job duties have never been such that blood testing was necessary or that such testing was consistent with some business necessity which can be articulated by Defendant.

31. The blood testing complained of herein is a medical inquiry which is not permitted by the Americans with Disabilities Act.

32. Shop 205-1 is not a shop in which respiratory equipment is mandated and the show was not above the OSHA action level at any time prior to the blood testing which was complained of herein.

33. Plaintiffs believe that they were subjected to genetic discrimination in violation of the Genetic Information Nondiscrimination Act, 42 U.S.C. §§ 2000ff, *et seq.*

34. Plaintiffs believe that they were subjected to discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*.

## **FIRST CLAIM**
### **(Discrimination in violation Genetic Information Non-Discrimination Act)**

35. Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein and would further state, as follows:

36. Enacted in 2008, GINA forbids employers "to request, require, or purchase genetic information" from an employee. 42 U.S.C. § 2000ff–1(b).

37. GINA includes a narrow exception to this general prohibition. GINA allows employers to acquire employees' genetic information when "the information involved is to be used for genetic monitoring of the biological effects of toxic substances in the workplace" but only if "the employee provides prior, knowing, *voluntary*, and written authorization." Id. § 2000ff-1(b)(5) (emphasis added).

38. Since at least January 1, 2016, Defendant engaged in unlawful employment practices at its Tulsa, Oklahoma facility in violation of Section 202(b) of Title II of the Genetic Information Non-discrimination Act, 42 U.S.C. §§ 2000ff-1(b), in that Defendant required the Named Plaintiffs, and other employees, to submit to involuntary blood testing under a purported Medical Surveillance program required by the Occupational Safety and Health Administration.

39. Defendant's Medical Surveillance program was not required by law and, as such, does not meet any of the exceptions under which an employer may request, require or purchase genetic information regarding an employee.

40. The blood samples taken from the Named Plaintiffs and other Class Members were subjected to both Chem20 and CBD blood panels. The Chem20 panel is a comprehensive blood screen which tests for, among other things, protein and metabolite levels in the individual's blood.

41. The effect of the practices complained of in paragraphs 33 – 35 above has been to deprive the Named Plaintiffs and other Class Members of equal employment opportunities and otherwise adversely affected their status as employees because of their genetic information.

42. The unlawful employment practices complained of in paragraphs 33 – 35 above were intentional.

43. The unlawful employment practices complained of in paragraphs 33 – 35 above were done with malice or with reckless indifference to the federally protected rights of the Named Plaintiffs and other Class Members.

44. That the conduct complained of constitutes genetic discrimination in violation of the Genetic Information Non-discrimination Act, 42 U.S.C. § 2000ff *et seq*.

**WHEREFORE**, Plaintiffs pray that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiffs' rights; (2) permanently enjoin the Defendant, its officers, agents, servants, employees, attorneys and all persons in active concert or participation with it, from conducting mandatory blood testing of its employees unless required to do so by law; (3) enter a judgment for Plaintiffs in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; and (4) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## SECOND CLAIM
**(Discrimination in violation of the Americans with Disabilities Act)**

45. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state, as follows:

46. Defendant's practice of requiring the Named Plaintiffs and other Class Members to submit to mandatory medical examinations, without just cause and without a legitimate business necessity, violates the Americans with Disabilities Act.

47. Defendant subjected the Named Plaintiffs and other Class Members to mandatory medical examinations without just cause and without a legitimate business necessity for doing so.

48. The effect of the practices complained of in paragraphs 45 and 46, above, has been to deprive the Named Plaintiffs and other Class Members of equal employment opportunities and otherwise adversely affected their status as employees in violation of the Americans with Disabilities Act.

49. The unlawful employment practices complained of in paragraphs 45 and 46 were intentional.

50. The unlawful employment practices complained of in paragraphs 45 and 46 above were done with malice or with reckless indifference to the federally protected rights of the Named Plaintiffs and other Class Members.

**WHEREFORE**, Plaintiffs pray that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiffs' rights; (2) permanently enjoin the Defendant, its officers, agents, servants, employees, attorneys and all persons in active concert or participation with it, from conducting mandatory blood testing of its employees unless required to do so by law; (3) enter a judgment for Plaintiffs in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; and (4) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
**Jessica N. Bailey, OBA #33114**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
*jbailey@a-vlaw.com*
***Attorney for Plaintiff***

EEOC Form 161-B (11/16)　　　　　**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Kevin J. Kniss<br>16320 E. 109th St. N.<br>Owasso, OK 74055 | From: Oklahoma City Area Office<br>215 Dean A. McGee Avenue<br>Suite 524<br>Oklahoma City, OK 73102 |

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 564-2017-00146 | James E. Habas,<br>Investigator | (405) 231-5485 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)　　　　　_(signature)_　　　　　1/17/2018
　　　　　　　　　Holly Waldron Cole,　　　　(Date Mailed)
　　　　　　　　　Area Office Director

cc: Karen Gillen
Associate General Counsel
AMERICAN AIRLINES INC
Corporate Headquarters
4333 Amon Carter Blvd. - MD 5675
Fort Worth, TX 76155

EXHIBIT A